USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v.-

ROLANDO GARCIA,

                Defendant.

---

20 CR 446-1 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    On or about September 1, 2020, Defendant Rolando Garcia ("Defendant") was charged by Indictment with one count of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, one count of Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2, and one count of Firearms Offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. (ECF No. 16.) Before the Court is Defendant's May 25, 2021 motion to suppress pretrial identification, prevent in-court identifications, and for a hearing, which the Government opposed on June 28, 2021. (ECF Nos. 41 & 43.) Defendant did not file a reply. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

    The Complaint alleges that Defendant and Co-Defendant Kayla Taylor ("Co-Defendant") orchestrated a home robbery. (Compl., ECF No. 2.) Co-Defendant met an individual (the "Victim") on Snapchat several days prior to the robbery. (*Id.* at 3.) On or about September 15, 2019, the Victim invited Co-Defendant to his apartment. (*Id.*) Once there, Co-Defendant asked questions about the locations of the Victim's valuables. (*Id.*) Several hours later, two individuals, Defendant and CC-1, broke into the apartment. (*Id.*) They threw the Victim to the ground and

demanded his valuables. (*Id*.) The Victim informed the men that his valuables were in another room and the men had the Victim escort them to the valuables at gun point. (*Id*.) The Victim then punched one of the men and ducked into another room. (*Id*.) Gunshots were fired and then Defendant and CC-1 fled with a quantity of marijuana and Co-Defendant left with the Victim's iPhone. (*Id*. at 3-4)

An individual (the "Witness") signed a supporting deposition at approximately 8:00 PM on September 15, 2019. (Gov't Ex. A, ECF No. 43-1.) The Witness was staying at the Victim's apartment as the guest of the Victim's mother at the time of the robbery. (Compl. at 4.) The Witness indicated that on the night of the robbery, he/she was sleeping on the living room couch and woke up at approximately 4:13 AM. (Gov't Ex. A at 1, USAO_000067.) The Witness described seeing Co-Defendant come out of the bathroom and subsequently identified her in a photo array. (*Id*.; Compl. at 4.) The Witness left the Victim's apartment, opened the downstairs door, and saw men dressed in black who started walking to the right toward Church Street Park. (Gov't Ex. A at 1, USAO_000067.)

The Witness later re-entered the Victim's apartment to retrieve his/her cell phone. (*Id*.) After re-entering, the Witness observed the same two males at the top of the steps in front of the apartment. (*Id*.) The Witness indicated that one of the males (the "Perpetrator") was wearing glasses and "kept looking at me." (*Id*.) The Witness described this individual as male, "either Puerto Rican or mix" with "some acne maybe," "dark curly hair," and probably "5'8"-5'9"." (*Id*.) The Witness also described the Perpetrator as wearing a black hooded sweatshirt, black sweats with a white stripe down the side, and black sneakers. (Gov't Ex. A at 1-2, USAO_000067-USAO_000068.) The Witness described the Perpetrator's glasses as "oval and wire full frames. They were dark." (Gov't Ex. A at 2, USAO_000068.)

At approximately 9:55 PM on September 15, 2019—nearly two hours after signing the supporting declaration— the Witness was shown a photo array and asked to identify the Perpetrator. (Gov't Ex. B, ECF No. 43-2 at 1-3, USAO_000081-USAO_000083.) The photo array was administered using a blind "two person shuffle" procedure whereby the administering sergeant did not create the array, know the Defendant's location in the array, or see the array prior to providing it to the Witness. (*Id*.) The Witness was provided with various instructions including that he/she should "[t]ake whatever time you want to view the array" and that "[t]he perpetrator may or may not be pictured." (*Id*.) The Witness then reviewed the photo array and was asked whether he/she recognized anyone in the array. The Witness indicated that he/she did and identified the Defendant as the Perpetrator.[1] (*Id*.)

Defendant moves to (1) suppress any and all pre-trial identifications of Defendant made through a photo array, (2) suppress any anticipated in-court identifications, and (3) for the Government to be directed to disclose additional information and/or for a pretrial hearing.

### STANDARD OF LAW

It is well established that evidence of "[a] prior identification will be excluded only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the Defendant] was denied due process of law.'" *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991)). Where a pretrial identification is challenged, a court must evaluate is using a one– or two-step inquiry. "The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*,

---

[1] Defendant avers that the Government has provided no information as to whether other witnesses were shown photo arrays and the results of those identifications. (ECF No. 41 at 2.) The Government avers that the it produced all discovery concerning witness identification evidence and that the Victim and the Witness were the only two individuals who participated in photo arrays. (ECF No. 43 at 3-4.)

3

922 F.2d 934, 973 (2d Cir. 1990). If they were not, the identification is "generally admissible without further inquiry into the reliability of the pretrial identification." *Id.*; *accord Raheem v. Kelly*, 257 F.3d 122, 133-34 (2d Cir. 2001). "If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *Maldonado–Rivera*, 922 F.2d at 973.

Significantly, a defendant "may not baldly request" a hearing into the admissibility of pretrial identification evidence—commonly known as a *Wade* hearing. *United States v. Berganza*, No. S(4) 03-cr-987 (DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005). In order to be entitled to a hearing, a defendant must "allege facts supporting his contention that the identification procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a *Wade* hearing." *Id.*; *see also, e.g.*, *United States v. Swain*, No. S(4) 08-cr- 1175 (JFK), 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (holding that a defendant is not entitled to a hearing where his "suggestion of impropriety in the presentation of a photo array is mere speculation"); *United States v. Adeniyi*, No. 03-cr-86 (LTS), 2003 WL 21146621, at *3 (S.D.N.Y. May 14, 2003) (denying a motion without a hearing where the defendant failed to proffer "any information indicating that there were irregularities in the presentation of the arrays"); *United States v. Giovanelli*, 747 F. Supp. 875, 885 (S.D.N.Y. 1989) (denying a request for a hearing where the defendant did not allege "any concrete grounds" to suggest that identification procedures were improper).

## DISCUSSION

**I.     Photo Array**

    *A.  Unduly Suggestive*

"The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). Defendant argues that the photo array used in this case was unduly suggestive, pointing out that it (1) contained six photos, (2) contained photos of men who were of similar ages, (3) featured men with medium to dark skin tones, close-cut dark hair, and light to no facial hair, and (4) contained only one individual who was not wearing square-type glasses. (ECF No. 41 at 4.) The Court disagrees.

First, courts in this Circuit have routinely upheld the use of six-person photo arrays. *See United States v. Morgan*, 690 F. Supp. 2d 274, 283 (S.D.N.Y. 2010) ("Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive."); *United States v. Goode*, No. 16 CR. 529 (NSR), 2018 WL 919928, at *12 (S.D.N.Y. Feb. 15, 2018) ( "The witnesses were shown six photographs of African-American males—a number sufficient to protect the Defendant's due process rights.").

Second, the fact that the photo array contained photos of men of similar ages, complexions, haircuts, and facial hair cuts against Defendant's argument. An array is unduly suggestive "if the defendant 'meets the description of the perpetrator previously given by the witness and the other [array] participants obviously do not.'" *United States v. Diaz*, 986 F.3d 202, 207 (2d Cir. 2021) (quoting *Raheem*, 257 F.3d at 134). Here, we have the opposite situation because the attributes of all of the men in the photo array, including Defendant, align with the Witness's description of the Perpetrator. Accordingly, the Witness was presented with an array

of options that all could have met the Witness's initial description. Finally, upon reviewing the photographs in the array, the Court finds that the glasses worn by Defendant were not unduly suggestive. The Witness described the Perpetrator as wearing "oval and wire full frames. They were dark." Although the glasses worn by Defendant may be perceived as more circular than the glasses worn by the other five individuals in the array, they are arguably not "oval" in shape and their circular variation is slight. Further, Defendant's glasses appear to be made of a black plastic, not wire as described by the Witness, whereas another individual in the array is wearing wire glasses.

Defendant also argues the array was unduly suggestive because (1) Defendant has distinctive tattoos on his face and neck, but the Witness failed to mention observing tattoos, (2) cross-racial identification is unreliable, (3) the presence of a weapon distracted the Witness from fully observing the Perpetrator, and (4) a hoodie may have disguised the Perpetrator's features. (*Id*. at 5.) These arguments are misplaced and speak not to the suggestiveness of the identification, but rather the reliability of the Witness's observations.[2]

Accordingly, the Court finds that the photo array used to identify Defendant was not unduly suggestive.

### B. Independently Reliable

Because the array was not unduly suggestive, Defendant's motion to suppress the pretrial identification fails. However, even if the array were unduly suggestive—which it was not—the identification was independently reliable. The factors that the Court must consider in making this determination include: "the opportunity of the witness to view the criminal at the time of the

---

[2] To the extent Defendant is arguing that the men in the array should have all had neck tattoos, the Court notes that because the photographs are headshots and are somewhat granulated, it is difficult to discern neck tattoos on any of the men in the array and rejects Defendant's argument.

crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

      As applied here, the factors favor the Government. First, the Witness viewed the Perpetrator twice around the time of the crime and at least one of these instances was at close proximity. (Gov't Ex. A at 1, USAO_000067) ("I went into the house. I got my phone. I walked right by them."). Second, while the Witness was not the Victim of the crime, the Witness was staying in the Victim's apartment at the time of the crime and likely would have paid attention to individuals coming in and out the apartment. Third, the Witness's description of the Perpetrator was detailed and accurately captured Defendant's complexion, hair, facial hair, and glasses. Defendant argues that the Witness's failure to identify the Perpetrator's race, describing him as "either Puerto Rican or mix," rendered the description unreliable. The Court disagrees. The Witness's failure to name the Perpetrator's race is irrelevant; the relevant inquiry is whether the Witness adequately described the individual's appearance, which he did. Fourth, the Witness was "very confident" in his/her identification of Defendant. (Gov't Ex. B at 1, USAO_000081.) Finally, the length of time between the robbery and the identification was short, consisting of approximately one day.

      The Court acknowledges that some facts favor Defendant. First, the presence of a weapon and the Perpetrator's hoodie may have distracted the Witness from fully observing the Perpetrator. Second, the Witness's failure to indicate that the Perpetrator had neck tattoos in his/her description to law enforcement may diminish the Witness's reliability. However, when weighed against a highly detailed description of the perpetrator, a close-range observation of the

perpetrator, and an identification that took place so soon after the robbery, the Court finds that the *Biggers* factors favor a finding of reliability.

Defendant also argues that eyewitness identification in general is inherently unreliable, citing, among other sources, statistics from the Innocence Project and commentary from the Supreme Court. (ECF No. 41 at 2.) While the Court acknowledges limitations with eyewitness identification, both the Second Circuit and the Supreme Court have accepted that, under the appropriate circumstances, eyewitness identification are admissible forms of evidence. *See, e.g.*, *Perry v. New Hampshire*, 565 U.S. 228, 245 (recognizing the "fallibility of eyewitness identifications," however, noting that the Supreme Court "has concluded in other contexts . . . that the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair.").

Accordingly, the Court finds that the identification was independently reliable.

## II.   In-Court Identification

Defendant argues that "[i]n-court show-ups are inherently suggestive and violate due process" and therefore moves to prevent any in-court identification. (ECF No. 41 at 6.) Defendant also argues that "in the absence of any identifying information as to the nature of the relationships, the level of the interaction with the defendant, the familiarity with or lack of familiarity with the defendant, an in-court identification of the defendant by the witness is so suggestive and the potential prejudicial impact it may have on the jury could violate Due Process." (*Id.*) Defendant does not provide any actual factual allegations warranting prohibition of an in-court identification, which is a generally accepted practice within this Circuit. *See e.g.*, *Sims v. Sullivan*, 867 F.2d 142, 145 (2d. Cir. 1989) (finding that "the failure to grant a lineup may constitute a denial of fundamental fairness where the in-court identification is so unreliable

that a very substantial likelihood of irreparable misidentification exists," however, "short of that point, such evidence is for the jury to weigh.") (internal quotations omitted).

Further, Defendant's objections are purely speculative. Accordingly, the Court denies Defendant's motion to prevent in-court identification. This ruling does not prevent Defendant from challenging the admissibility of the Witness's testimony on other grounds in a motion *in limine* closer to trial or from engaging in appropriate cross-examination of the Witness should the Witness be called to testify.

### III.   Additional Disclosure and/or Pretrial Hearing

Defendant's request for additional disclosure and/or a pretrial hearing is denied. As explained above, there is no evidence that the photo array was impermissibly suggestive. Further, Defendant fails to allege any deficiencies with how the photo array identification was conducted. *See United States v. Goode*, 2018 WL 919928, at *13 (S.D.N.Y. Feb. 15, 2018) ("Absent a contested issue of material fact as to the suggestiveness of pretrial identification procedures, a defendant is not automatically entitled to an evidentiary hearing on the claim." (internal quotation omitted)). Likewise, Defendant has failed to raise any factual disputes that warrant additional disclosure. Accordingly, Defendant's motion is denied.

### CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED. The Clerk of the Court is kindly directed to terminate the motion at ECF No. 41.

Dated:   July 30, 2021
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

9